The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Mr. Shipman, when you're ready. May it please the Court, good morning. My name is Gary for rebuttal. U. S. Tobacco is a North Carolina agricultural cooperative which the North Carolina Cooperative Marketing Act mandates be organized as a nonprofit corporation. Much has changed since its formation in 1946 and the end of the federal price support program in 2004. In this de novo review of the trial court's dismissal of the plaintiff's complaint, the first issue for determination by this court is to ascertain the intent of the North Carolina legislature in determining what it meant when it stated, quote, so far as appropriate, the provisions of the North Carolina Business Corporation Act would be applied to every cooperative association with capital stock except where the provisions of the North Carolina Business Corporation Act, quote, are in conflict with or inconsistent with. If the Business Corporation Act does apply as opposed to the Nonprofits Act, can you still prevail? We did not plead a claim. So are you waiving that, any argument then if the Business Corporation Act applies? Are you waiving any argument that you can prevail, nonetheless? Your Honor, we have pled. You'll see some of the overlapping provisions of dissolution under the North Carolina Business Corporation Act. For instance, assets are being wasted and applied, misapplied. And that's because of the fundamental nature of cooperatives. Counsel, to follow up on that point, while there are some overlapping provisions, you mentioned one, and I think the prejudice to a shareholder or injury to a shareholder is another. I don't think, maybe I'm wrong, even if you pled that, you argued that on appeal. Am I correct in that? Your Honor, I think you're correct because we are arguing that because of the unique nature of cooperatives, which are mandated to be organized as a nonprofit corporation, that consistent with how the Wisconsin Supreme Court tackled this issue, then certainly they must be dissolved pursuant to the provisions of a nonprofit corporation act because they are not the same. Stockholders in a business corporation are not the same as members in a nonprofit agricultural cooperation. But if you read, if the argument is that because you're a nonprofit, that necessarily requires you to be dissolved under the nonprofit provisions, doesn't that read away the provisions that talk about the existence of organization by capital stock or not capital stock? I mean, what would, if the very fact that you're nonprofit means you go there, what's the point of the capital stock language? First, to be clear, we are not contending that merely because they're a nonprofit you apply the North Carolina Nonprofit Corporation Act. We are contending because they are a nonprofit agricultural marketing cooperative. But I think to follow up on Judge Quattlebaum's question, they do issue capital stock, which just a plain reading of the act would indicate to me that the business corporation act applies. So I'm not sure you had an answer for Judge Quattlebaum's question about what about that language about capital stock. Thank you. As we've pointed out in our brief, cooperatives organized with capital stock grant no greater rights to its members than cooperatives organized without capital stock. All that a cooperative with capital stock enables a cooperative to do is accumulate capital. That's it. No greater rights are granted to the members of a nonprofit agricultural cooperative with capital stock than without. And look at the differences between the rights of a shareholder and the rights of a member. For instance, members of a nonprofit agricultural cooperative have no rights to the accumulated capital. Next, their membership can be redeemed for five dollars. Next, whatever is distributed in a cooperative is not distributed in accordance with total cooperation, only to those who patronize the cooperative. Counsel, I think those are fair and reasonable points. I don't quarrel with them at all. But it seems like those points go to the question of whether it was reasonable to have this bright line delineating point of capital stock or not with respect to a cooperative. And it may be that that, as a matter of policy, kind of doesn't make sense. And you've pointed out some reasons where that might be the case. But it seems like your arguments are really asking us to disregard that language. Maybe I'm misunderstanding you. And if so, please clarify. Sure, Judge Gregory. Thank you for the question. If the legislature had intended that the provisions of the North Carolina Business Corporation Act apply to all aspects of a nonprofit corporation with capital stock, it clearly would have said so. Instead, it said you apply it as appropriate. That has to be a fact-specific inquiry. For instance, what would be an appropriate application of the North Carolina Business Corporation Act to the acts of a nonprofit agricultural cooperative? For instance, the duties of a member to other members. North Carolina Business Corporation shareholders owe no duties to other shareholders. They owe no duties, with some exceptions, to the corporation. What about the duties of members of board of directors, business judgment rules? Those kinds of principles clearly should apply as appropriate to those kinds of things. But when we're talking about a dissolution and the purposes for which this cooperative was formed no longer exist, when they can no longer act cooperatively because of market forces beyond their control, then it is more appropriate, it is more fitting to apply the unique provisions of the North Carolina Nonprofit Corporation Act because the purposes for which this cooperative was formed no longer exist, or at least that is a question of fact, to be determined by a fact-finder, not at the 12B6 level. So again, we think we have pointed out the unique differences between a cooperative and a business corporation, Judge Gregory, some of which I have highlighted. We have pointed out the differences between the rights of members in a cooperative versus the rights of a shareholder in a business corporation. And with respect then to the declaratory judgment action that was dismissed by the trial court, we believe, we contend that given that that was premised upon an application of the North Carolina Business Corporation Act, and given that the declaratory judgment action is so intertwined with the allegations of the judicial dissolution claim, that the trial court erred in dismissing that claim and abused its discretion in so doing. I'll be happy to answer any other questions that you might have at this point, but otherwise I'd reserve my remaining time for rebuttal. Mr. Chilton, before you sit down, I don't want to go over because Judge Qualamon and Judge Black have asked the question, but I have the same concern. It seems like you to you, you meaning your client, then it shouldn't make any difference in whether or not which provision will be applicable for dissolution. But then you came back and you said, well, there's an exception. But can you just help me a little bit more? It didn't say unless appropriate, except whether provisions of the act are in conflict with or inconsistent with expressed provisions of this subchapter. Can you just tell me, make it clear, what is expressly in conflict? It didn't say if something about your company is different in the things you seem to be delineating. It talks about a statutory determination of conflict and inconsistency. What is the statutory inconsistency that would apply to the exception? First, the as appropriate language comes before, and then next, it would not be appropriate and it would be inconsistent with the North Carolina Cooperative Marketing Act to apply principles of investment-backed expectations where a corporation is not being conducted to the Profit is the antithesis of a co-op. Co-ops exist to make profits for the members who patronize them, not for all of the members of a cooperative. So applying principles of a business corporation where shareholders' legitimate investment-backed expectations as a stockholder may be frustrated. It's just apples and oranges, we contend, to the concept of an agricultural cooperative that is organized as a non-profit with capital stock. To follow up, Chief, can I ask one follow-up to that response? To follow up on Chief Judge Gregory's question, your response, I understand your argument, but can you point or identify a specific statutory citation by section number that you say is in express conflict with the for-stock capital stock provision? When you look at the dissolution provisions of the North Carolina Business Corporation Act, GS 55-14-30, when dissolution is ordered when the business is not being, quote, conducted to the advantage of stockholders, for the protection of the rights or interest of stockholders. Members of a cooperative have none. When the shareholders are deadlocked, there are limited things upon, the shareholders don't vote on the business of this cooperative, the board does. All the stockholders here do is elect the regional directors. They function, they operate totally different. Rights of appraisal. Shareholders of a business corporation have rights of appraisal. Members of a non-profit corporation have no right of appraisal. This cooperative has even used the provisions of the North Carolina Non-Profit Corporation Act, the Rigby case, to deny members of this cooperative rights which they otherwise would have had under the North Carolina Business Corporation Act. So this cooperative itself has relied upon the provisions of the North Carolina Non-Profit Corporation Act, not the Business Corporation Act, for its own internal affairs relating to members. So, again, I think we've addressed many of these issues, but, again, thank you. I'll reserve the rest of my time. Thank you. Thank you, Mr. Shipman. Yes, sir. Mr. Whitman. Thank you, Chief Judge Gregory. May it please the Court. Good morning. My name is Lee Whitman. I'm from the Raleigh, North Carolina law firm, Ryer, Grobbins, Yates & Pond. I'm the general outside counsel for the United States Tobacco Cooperative, and I'm also its litigation counsel on the Speaks case. Your Honors, for the reasons set forth in our appellee's brief, and in the evidentiary record, we contend that Judge Dever's order dismissing the amended complaint with prejudice should be affirmed by this Court, mainly because the plaintiffs pled the wrong standard for dissolution. But Judge Dever didn't stop there. Even if they had pled the right standard, Judge Dever's order analyzes the complaint, the allegations of the and likewise found that even on their own allegations in this long complaint, they could not state a plausible claim. Finally, Judge Dever correctly and properly dismissed the declaratory judgment action as well, finding that it was duplicative of the dissolution claim, that it served no reasonable, useful purpose, and making the point that you cannot, the Declaratory Judgment Act itself does not form an independent basis for relief. Your Honors, the 12B6 standard in federal court is much more stringent than the standard that Mr. Shipman and I have in state courts in North Carolina. The complaint in federal court must state a plausible claim for relief, that the court, that permits the court, the district court, to infer more than the possibility of misconduct. The reason that I raised that, Your Honors, is it's very important. There are no allegations of misconduct in this amended complaint, as against my client. There are no allegations that... Going to the Business Corporation Act versus the Cooperative Act issue, Mr. Shipman says that that language, as appropriate, makes all the difference to his client, that we shouldn't be focusing just on the issuance of capital stock or not. What's your response to his argument about the as appropriate language? Yes, Your Honor. Thank you, Judge Thacker, for the question. I believe Mr. Shipman, who is a strong advocate for his clients and has been for many years, is making the only argument that he can. But that argument goes to the legislation. This decision has already been made by the North Carolina General Assembly. They drew a bright line, line in the sand, that assists anybody reviewing Chapter 54, the Marketing Act, in determining which dissolution provisions apply. It's rare that there is a bright line drawn this clearly for litigants. It is right there in Chapter 54, and it's not just... I think Mr. Shipman's arguments would have more viability, Judge Thacker, if 54-142 existed in a vacuum. But it doesn't. The legislature also passed 54-142.1. So it did both. And the only distinction, the only language that is different in 142 and 142.1, other than reference to the Business Corporation Act or the Nonprofit Act, is the word with or without capital stock. Well, how do those statutory, those statutes that you reference, cancel out the word, four words, so far as appropriate? Right. That's the right question under statutory interpretation, Chief Judge Gregory. And I will state this. There are no cases that provide us with any direction on that. And so what we have to do from a statutory interpretation perspective when we're analyzing this is essentially the way to read this, because that language appears in 142 and 142.1. It's identical. The only real difference between what the legislature has done is said, if you have capital stock, you have shareholders. And if you have shareholders, they have rights. And the Business Corporation Act goes to shareholders' rights. It makes complete sense, logical and analytical sense, for a capital stock corporation to have the dissolution provisions in the Business Corporation Act. Now... The only problem is that, as a court, we have to construe statutory language for what it is. Right. Just like you mentioned other provisions, they had opportunities to clear this up by striking those four words. It made it a lot easier. But we can't do that redacting as appellate judges. So what we're left with... So it must mean that there are some corporative associations with capital stock where it may not be appropriate to apply. Correct? It may mean that. That absolutely is correct. And I take your point very well, Chief Judge Gregory. Here's my response to that. The plaintiff has the burden of proof on that. The plaintiff filed the amended complaint. By the way, this is the third amended complaint. I mean, just to... I want to... I'm sorry to interrupt a little bit. That's okay. Because I think that's an important question. Yes, sir. I don't think anyone doubts they have the burden of proof. We're talking about whether they've pled, and we're required to accept their allegations as true now. Right. So I don't think we're at the burden of proof standard. We're at the pleading standard. I appreciate what you're saying, Judge Carlebaum. And my point was going to be, after I said that, that in the amended complaint, if you're going to ignore the black letter law in this case, under Chapter 54, where my client was incorporated, states clearly and plainly, if you have capital stock, the Business Corporation Act applies. If you are filing a complaint where you were going to ignore 54-142 and proceed directly to 54-142, there are no allegations, nothing pled in the four corners of this complaint for the 12B6 standard that would have told Judge Dover why Mr. Shipman believed it was inappropriate to apply the Business Corporation Act. Well, he's saying all these reasons. I mean, there's a lot of things he's talking about, how the times and the economic realities and the circumstances pertaining to the industry have dramatically changed. And he says those things make it inappropriate. And I don't know if that's true or untrue, but that's what they've pled. So they've pled some facts. And so what are we to do with that language? The same thing, Your Honor, that Judge Dover did, which is he had to make the determination in the absence of legislative intent, legislative history, or case law, he had to make the determination under all the circumstances in this case, what was the North Carolina Supreme Court most likely to do, apply the BCA or the Nonprofit Act? And he did the proper analysis. And the point that I was trying to make is, if it's your position when you come into the complaint, and again, we're not at, this isn't a traditional 12B6 first complaint filed in a lawsuit thrown out. The original complaint was filed in 2012. We were all here before this same panel on the $24 million settlement that got reversed. And then we came back, and after you remanded the case, a third amended complaint was filed. So Judge Dover, this is not Judge Dover's first look at this record. It is also not Mr. Shipman's first attempt to get the facts right. But he skipped, he ignores in the complaint 54-142, and he goes directly to 54-142.1 with no allegation, no allegation that Judge Dover could take and light most favorable to him as why it would be inappropriate to do what the North Carolina legislature said. But, Mr. Whitman, you teamed up very well. You triangulated because you said the district court would have to look at which of the two statutes would apply. But the connector to that triangle is this language of how did the district court resolve this when appropriate aspect of it? Because there's one like, well, what the Supreme Court of North Carolina might do here and there. But aren't you delving in some degree of fact-finding to make that they're different? But isn't it a factual question, perhaps, as whether or not they in fact are valid, appropriate reasons why we should not apply it to them? It respectfully, Chief Judge Gregory, in this case, I submit to you that there is not, because Judge Dover did what he was required to do under the Iqbal standard. He looked at the complaint, which is the third time these plaintiffs have attempted to file a dissolution claim under the wrong statute. He accepted the facts. He talked about factual disputes. He accepted the facts in the light most favorable to the plaintiffs. But then he concluded that even under those facts, as alleged, there are no plausible — there's no plausible claim stated. And this is important. Under either the Business Corporation Act or the Nonprofit Act, Judge Dover could have just stopped when he did the analysis and said, I find that it's most likely under these circumstances that the North Carolina Supreme Court would apply the Business Corporation Act. He could have just stopped. Is the — it was — and you know the order better than me, so I may not be remembering it correctly, but it seems like as he did that, the primary reasoning was, I think, something you began to talk about, was that there were no allegations of misconduct by the co-op? Yes, sir. Is that then the way we look at as appropriate? Is that the way that the district court looked, or as appropriate? I mean, we're — Right. If we were to give some meaning to those — that language, which, you know, I think we're required to do, what is it? And it seemed like in the district court, it relied on the absence of allegations of co-op misconduct as opposed to, you know, general, you know, supply and demand, Adam Smith-type issues. Correct. And I agree with you. Let me see if I can connect the dots for you, because I have read this order quite a few times. And I think what Judge Dever was going to — the issue he was going to when he made the comment that there are no allegations of misconduct by the board of directors or the corporation was the issue — he had already completed his analysis, essentially, that the Business Corporation Act would apply and not the Nonprofit Act. He had analyzed the facts under both set of statutes, under both, and that's important, and found even if 55A does apply, I don't find a plausible claim under ICBAL. Then he made the comment after that, Judge Quattlebaum, that said, and really, dissolution is not the right remedy here. What does dissolution do under the case law? Dissolution is to address corporate malfeasance, something that the corporation is doing wrong on behalf of the shareholders or the members, and there is not a single allegation in this very thick Third Amendment complaint that alleges that the board of directors did anything wrong. So he was making that comment at the end of the analysis. And if I could come back around to the question that Chief Judge Gregory asked, and you followed up on, Judge Quattlebaum, I think, in fairness, when you read the four corners of Judge Dever's order, essentially what he did, since we don't have any case law interpreting what the words, so far as appropriate, mean, we don't have any legislative history, we don't have an insight as to exactly what the legislature meant by that. He did an analysis of the facts that were pled, took them to the light most favorable to the plaintiff, and found that there was nothing inappropriate about applying the Business Corporation Act's dissolution provisions to this cooperative. And I think the legislature sets the bar pretty high, and this goes back to the initial point I was trying to make. If you're going to come into federal court and make the allegation or take the position, and this is where I was going on the burden, Judge Quattlebaum, I certainly understand what you were saying. There's nothing in the complaint, the four corners of the complaint, which is what is evaluated on the purposes of 12b-6, that would indicate to Judge Dever that the plaintiffs were saying it is inappropriate to apply the Business Corporation Act. They just ignore the court. What about the allegation that, because that's why I'm saying it's beyond misconduct or any questions like that. They're saying that they can no longer fulfill the mission. There could be reasons beyond their control. The market is different, the allocation, you know, the tobacco industry and all those things. That has nothing to do with the issue. It's time to give this gig up, and we need to dissolve it. So how do you resolve that? The district court, not you. How are they able to say that that's not, it would be inappropriate? So I have two responses to that, Your Honor, and I'll answer the most immediate one first, which is Judge Dever did exactly not. He looked at the complaint and he essentially said the reason, the only basis upon which the Third Amendment complaint proceeds is 55A1430E, which is what Your Honor just mentioned, that you're not fulfilling your corporate purpose. He looked at that very close, and he found two things that are very salient for this Court's consideration. First, the entire foundation for the plaintiff's argument on that was relying on the wrong statute. Judge Dever did the analysis, and he draws back every allegation that Mr. Shipman's client made with regard to not fulfilling corporate purpose was really under 54.129. And this is important. Details matter. 54.129 is policy, legislative policy for Chapter 54. And Judge Dever makes this point. 54.132 is purpose. So what does the language in 55A1430E say? It says you're not fulfilling your purpose. Not policy. Purpose. So the complaint is completely alleged as the wrong standard on multiple levels. It uses the wrong standard for dissolution, and even when you analyze under 55A, is the corporation serving its original purpose, they don't go to the allegations in 54.132 with regard to purpose. And if you read 54.132, purpose, in connection with 54.151, powers, in connection with our articles of incorporation, it's a very broad grant of power and purpose to this agricultural cooperative. And the second piece, I said I had two answers to this, Your Honor, and I do bring it up because this is not your typical initial complaint filed, 12B6 motion granted. We are 10 years into this thing. It's 2022. Mr. Shipman filed his first complaint in 2012. But remember, when we were here to see you guys a couple of years ago, Mr. Shipman was supporting a $24 million settlement of that case. And in reaching the order that he did, Judge Dever, that 24 million was reasonable and fair for the class, he had to analyze Mr. Shipman's claims. And guess what he analyzed? He analyzed that claim under 55A1430E, and what did he say? Judge Dever said, and this is in docket entry 267 on page 56 of Judge Dever's order, he says, quote, as for subsection E, the cooperative's articles of incorporation permitted to engage in, quote, any activity involving or relating to financing, marketing, selling, and or distribution of the flu-cured tobacco, period, close quote, articles of incorporation. Based on this court's extensive review of the cooperative is still actively carrying out its purpose. Now, that was in his order, an order that Mr. Shipman and his clients were supporting at the time. And Mr. Shipman knew that finding had been made when he then filed a third amended complaint, still alleging that the corporate purpose wasn't being served. This same judge, Judge Dever, then analyzed that claim again. And to Judge Dever's credit, he did not reach back into the evidentiary record from the class settlement. He analyzed the allegations in the third amended complaint, and only the third amended complaint, to conclude under ICBAH that even if you take the facts pled and light most favorable to the plaintiffs, it doesn't state a plausible claim. Because when you look, when you actually distill the allegations, and there's a lot of them in that complaint, Chief Judge Gregory, you can see, and Judge Dever identifies them in his order, how he actually alleges that the cooperative is serving its purpose. It is serving its purpose. It is serving its members. We do act cooperatively. Mr. Shipman's complaint uses claims that we're not acting cooperatively, and that's a misstatement of cooperative law. We act cooperatively with the members that we have to market, sell their flu cured tobacco for the benefit of them as active producers of that agricultural product. We do act cooperatively. We continue to act cooperatively. We serve a very vital function for these farmers. Everything that Mr. Shipman alleged about the industry is true and was taken as true by Judge Dever. It's very, very hard for tobacco farmers out there. And even though that's the case, Judge Dever finds in the allegations made by the plaintiffs that there is no plausible, no plausible attack for dissolution of this cooperative on the facts alleged, the facts that are undisputed. This cooperative is serving its purpose. It is more essential than ever to the flu cured farmers that are still able to put that crop in the field that our cooperative offers the services that it does. And again, Judge Dever could have reached back and said, in support of the dismissal order I'm issuing, look, I did a full evidentiary review of substantive evidence and depositions and affidavits, and I already found that it's serving its purpose. He did that. He did what he was supposed to do. He followed the 12B6 protocols. He followed the standard of review. He took the facts in the light most favorable to the plaintiffs that alleged them. And he determined, and like I said, he didn't just stop when he concluded that a business corporation act applies. He said, let's look at the allegations under 55A, because even there, based on what's pled, I can't do anything but conclude. It's not plausible to conclude that this cooperative is not serving its purpose. And that's huge, because we know what the district court judge was thinking now. And based on those two analyses that he did, he then dismissed the declaratory judgment rule. And that's pretty straightforward black letter law in this circuit, that the judge has the discretion to do that, especially given that under the declaratory judgment act, there's no substantive right. Those declarations have to be attached to a separate substantive claim. So, your honors, for all of those reasons, the reasons in our appellee's brief, the reasons that we've discussed in the oral argument, it's our respectful request that you affirm the decision of the district court to dismiss the third amendment complaint with prejudice. Thank you. Thank you, Mr. Whitman. Mr. Shipman, you have some time. My piece, please, the court. Might I remind the court, this was a supplemental pleading, setting forth the matters that had occurred in the tobacco industry since 2012, and much had changed, not only in the industry generally, but with this cooperative specifically. As appropriate, the North Carolina legislature But you do include paragraphs in the complaint at JA 143 and 144, at least, that indicate that the cooperative was serving the purpose of the cooperative. Until the end of price support, it was, because the only way you could get flu-cured tobacco Is that still in your complaint? Your supplemental complaint, where you updated everything? I'm sorry, was what? What I just, the allegations that are at JA 143 and 144, that's still in your complaint. In our supplemental complaint? Uh-huh. Okay. Do you have a paragraph? I don't have the actual, I've got the complaint. Do you disagree that there are places in the complaint that indicate that the cooperative is serving its purpose? No, ma'am. We have fundamentally stated that it's not serving its purpose. Look at the Jones case as to what the North Carolina Supreme Court said 100 years ago. There is certainly, they are providing a market, but as the Jones case said, they must be able to act cooperatively to control prices, to provide a market. That's the unique, that's why they have antitrust protections, that they have the ability to require all of their members to sell their product only through them. That's traditionally the way agricultural cooperatives do their business. Egg cooperatives, butter cooperatives, milk cooperatives, everyone must sell through us so they can control prices. And as the authority that we have cited in our brief makes clear, if they do not take production from all of their members, they cannot control prices. And contrary to a suggestion to the contrary- Paragraph 82 on JA 144, that paragraph seems to list a number of things the cooperative did in an attempt to achieve the goals of the cooperative. Yes, ma'am. Prior to 2012, when this action was filed, those actions had been undertaken post FETRA with the proceeds, if you will, granted to them by a congressional act. So yes, this complaint details the efforts that this cooperative have made. We're not alleging misconduct. That's back to the point. We have decided that despite their best efforts, they are no longer acting cooperatively and therefore it is not appropriate to apply the provisions of the North Carolina Business Corporation Act to a claim for dissolution by stockholders when members of a cooperative are not stockholders and do not have rights as a opportunity to refresh my memory looking back at the district court's order. It looks like what the district court said is that you have allegations about how the co-op is no longer able to serve or further its purpose. We can debate whether those satisfy that standard. I hear you on that. But what it looks like the district court says is your arguments for why it's not appropriate really, you know, fundamentally amount to your claim that the structure of a co-op is different than the structure of a for-profit corporation. Members versus shareholders, you were just talking about that. And it seems like the trouble with that argument, you know, maybe as appropriate has to mean something, but it can't mean that the structural differences between a co-op and a for-profit entity are defined what's appropriate or not because that really would erase the with or without capital stock. And I agree with you. And that's why we have pled the market conditions that currently exist. That's why we have pled the traditional differences between a business corporation and a cooperative that you're not acting cooperatively now anymore. You're acting selectively. They're acting like a business corporation. So I think what you've got to do is apply the facts as pled to determine whether it is appropriate. The structure is not a one size fits all decision about whether to apply the business corporation act or not. There is no bright line, contrary to suggestion by counsel for the cooperative. If it was that clear, the legislature would have said so. What we're contending is in light of the current situation faced by this cooperative, where they no longer can control prices. You look at what the Jones case says to be the purpose behind, and one of them is to control prices against big tobacco. Judge Gregory, I sense you had a question. I'm listening. I was thinking about your argument about that. And this is a naughty case. No question about it. But it seems like what you're talking about is sort of, the statute is sort of the gatekeeper, like telling you which way you go, one way or the other, based on who you are, not what you want. And it seems like it's a conflating of, well, if we get inside, it'll show you how we're different, because as you said, it's not their performance, it's that the market has changed. But for statutory purposes, we've got to first decide which way you go. And what's the appropriate, whatever it means, it must be appropriate based on who you are, as opposed, clearly, as the details, because then that would be the tail wagging the dog, because then you get in there, well, this is what we need. Oh, then you're, it's appropriate. You see what I'm saying? Yes, sir. The problem is, you have to sort of stage this, get into the door first, and you can't say, well, if I can get in there, I'd have the key that I'd be able to open the door. No, you got to have the key before you open the door. You see what I'm saying? The final point, and I'll sit down, and I appreciate it. But no, listen, I want you to drill into that, because I think that's important. At least I think that's important. Well, that's why we point out the differences between the rights of a member of a cooperative, they're not freely transferable, they can be redeemed for $5, and the rights of a shareholder. You can't win the purpose, and you must accept that as true, for which this cooperative was formed no longer exists. You can't apply what appear to be issues of misconduct or issues of lack of investment-backed expectations. You can't apply that to a agricultural cooperative whose purpose no longer exists through no fault of their own. Thank you. Thank you. Thank you so much. Thank you both, counsel. Thank you both. We would love to come down and greet you in our normal Fourth Circuit tradition, but you understand, under the conditions, we can't do that. But please know, nonetheless, we very much appreciate your arguments and being, as I said before, these thorny issues. We appreciate you helping us on that. We wish you well. Be safe. Thank you so much. Thank you, Judge Gregory.
judges: Roger L. Gregory, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.